May it please the court opposing counsel. My name is Gerald Needham. I'm the attorney for the appellant Richard Alan Smith. Mr. Smith was tried for some extremely violent crimes in this case. Armed bank robbery, carjacking involving a weapon, possession of various firearms. There was no dispute as to factually what occurred in this case. There was no dispute as to what items Mr. Smith robbed, what Mr. Smith did. The only issue for the jury's consideration was Mr. Smith's state of mind at the time the offenses were committed. Mr. Smith presented the affirmative defense of insanity. During the vaad daair, one of the perspective members of the panel alerted the entire panel to what occurred to one of his family members. When one of his family members mounted a successful insanity defense, was found not guilty by reason of insanity. He knew this family member and knew his character and a couple years later that individual was released into the community and he was quite skeptical about the defense. During the trial, testimony and evidence was elicited from a government expert that he conducted forensic evaluations at the federal medical facility where he worked after individuals were found not guilty by reason of insanity. This, like I said, this was an extremely violent crimes that Mr. Smith was accused of committing. During closing arguments, the government repeatedly referred to him as a danger. Five separate times the government brought out information about his danger. One, they repeated what Mr. Smith said during his videotaped confession. Another instance, they alluded to Mr. Smith being a danger in connection with the elements they had to prove concerning carjacking. But separate and apart from that, three separate occasions without any basis to prove any facts, the government called Mr. Smith a danger. They coupled it with the words, he was not insane at the time. There was absolutely no justification for those comments to the jury. The court was requested after summations to instruct the jury that Mr. Smith, if found not guilty by reason of insanity, would only be released if that court found by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person. Or any substantial risk of bodily injury, property damage to another individual. That was crucial in this case because Mr. Smith's defense was one of insanity, a permanent defense. It fit with his theory of the defense. There was no justification for this. As a matter of curiosity, is the instruction that you propose the correct statement of the law? It is, Your Honor. I took the language from the statute when an individual was found not guilty by reason of insanity and what standard the court would have to find to release that person in the community. It was, I believe, my requested instruction 13. Right before that was the requested instruction 12, which was the insanity defense, which the court gave. The court gave just a limited language that there would be further proceedings. But that was less than, that was even more problematic for the defense because the jury had heard that an individual could be released from the juror. They had known from the testimony of the government expert that there would be some type of further review by an expert. They knew that Mr. Smith, at the time of the offense, was under the court's supervision because he was on supervised release. In Shannon, the Supreme Court took the obvious example and said that if someone argues to the jury that if he's found not guilty by reason of insanity, he would go free, then it would be appropriate to give that type of instruction. That was what the government was, in fact, arguing here by inference. So the government wasn't that explicit. They just talked about how dangerous this crime was, what a dangerous person he was in terms of the crime that was committed. So how do you extrapolate that into Shannon? They didn't say it was a dangerous crime. They said he was dangerous and then said he wasn't insane. Insane people can be, are a danger. We know that. But there was no justification. It was not linked to any piece of evidence that they had to prove. It was not linked in any way to rebut the affirmative defense of insanity. So you're saying that the implication was if you find him not guilty by reason of insanity, he'll be unleashed on society? Is that the inference you think is correct? What case specifically are you hinging your assignment of error upon? Is it Shannon or something else? Shannon and Simpson, Simmons, I should say, is an analogy to that also where the court held that if some type of false dilemma is presented to the jury that is an argument that they must keep this person in jail by convicting him, the court should really, I mean, the court should instruct the jury that that's not true. Here, I was asking the court to make sure the jury knew that there would be further proceedings, but those proceedings would involve a very high standard of evidence, clear and convincing evidence. In the record, was there talk from the prosecution regarding defendant's future dangerousness? Or was the reference to his present or past? He kept calling him, he's not a danger, but dangerousness. He is dangerousness. That was the term he used over and over three different times. But in Simmons, the turning point of the case was the fact that the prosecution talked about the future dangerousness. Do you see that as a difference? Yeah, but there was no evidence at the trial that Mr. Smith was no longer a danger. In fact, he had been in custody the entire time. There was no evidence that he had been rehabilitated and was not a danger at that time. In fact, his probation officer testified about all the problems he had heard, he had had from his mouth, and so there was numerous evidence, overwhelming evidence that he was a danger. The crimes themselves, there was a shootout by the Oregon State Police trying to arrest him. His car was rammed repeatedly to stop him. Three different firearms were used. The issue was his mental state at the time of the crime, not his mental state at the time of the trial. Correct. His mental state at the time of the crime. But there was no evidence that his mental state had changed in any way from the time of the offense. He had been in custody the entire time. There was no evidence of that. The clear inference from the government's arguments were that if this individual is released in the community, he is going to be a danger. That's precisely what the court in Shannon was concerned about. But the government's comments seemed to be in the past tense. When he was talking about the prosecutor was talking about the insanity defense and he said, speaking at the time of the crime, he was many things, cunning, deliberative, dangerous, but he was not legally insane. So the prosecutor seemed to be speaking in the past tense. He was speaking about the time. That was the issue at the time of the crimes. Correct. And so that doesn't say much about an argument that he'll go out and do it again if you release him now. That argument didn't fit to any of the elements. It didn't go in any way to rebut the defense of insanity. There was no reason to make that argument except to arouse the jury's passions and have them concerned about the consequences of a verdict of not guilty by reason of insanity. Coupled with the juror's statement that everyone heard that individuals will go free. And he knew about someone who asserted that defense within a couple of years had been released into the community. When the court said that in view of the prosecutor's comments, it was going to give an instruction. Did you specifically object to the formulation of the instruction that the court gave? Yes. Except for record to 147. I asked for the specific language outlined in the statute. That was your request. And then the court said, this is what I'm going to do. Yes. Did you specifically object to that instruction? Yes, Your Honor. Thank you. Thank you, counsel. May it please the court. Gary Sussman appearing for the United States. The primary issue in this consolidated appeal is whether the district court abused its discretion in refusing to give defendants requested jury instruction on the consequences of a not guilty by reason of insanity verdict. And in light of the clear and controlling precedent from both this court and the Supreme Court, the answer to that question is no. In the Shannon case, the Supreme Court held that an instruction on the consequences of an NGI verdict was not required under the Insanity Defense Reform Act and should not be given as a matter of general practice. After all, the jury's job is to find the facts and then to decide based on those facts whether the defendant is guilty of the crimes charged. And only after a verdict is returned does the court impose sentence. Where a jury has no sentencing function, and it had none in this case, the consequences of their verdict is for the court and not the jury to ponder. The court did see fit to give an instruction regarding what would happen in the event there was a finding of insanity. The court did, over the government's objection. And that instruction that was given was probably more than what defendant was entitled to under Shannon and Frank. But in the end, it was a fair and balanced and neutral instruction. And it was accurate. Did you try this case? I did. And could you respond to opposing counsel's point that there was no reason to discuss how dangerous the defendant was except to inflame the passions of the jury? Those comments that Mr. Needham referred to, he takes somewhat out of context. If you view the entire closing argument as a whole, rather than the small little snippets that were cited in Mr. Needham's brief, it becomes clear that the context in which those comments were made was not simply one to inflame the passions of the jury or to get them to convict Mr. Smith because he was so dangerous. Rather, what happened was, is that, well, the bulk of the government's argument was devoted to rebutting the insanity defense. And I started out in the argument by pointing out that defendant had not and could not establish either prong of an insanity defense. First, he had not and could not establish that he was suffering from a severe mental disease or defect at the times he committed these crimes. Because while the experts differed somewhat in their diagnoses, not one of them called by either party testified on the stand that the defendant was suffering from a severe mental disease or defect. Not one of them. And in fact, two of them, the government psychologist and defendant's own treating psychiatrist testified that he was not suffering from a severe mental disease or defect. Then the remainder of the government's argument was devoted to examining defendant's actions, his conduct, his statements before, during, and after the crimes charged in the indictment. Then arguing that those were not the actions and statements of someone who was so severely mentally ill that he couldn't understand the nature and quality or the wrongness of his actions. The government recounted events leading up to the bank robbery and up to the two carjackings, how defendant carefully planned them, how he carefully executed them, what he did after them. Then argued that none of those actions, none of those statements were typical of someone or indicative of someone who was legally insane. The government recounted in detail his tape-recorded confession, statements he made after arrest. All those would have gone to support your comments that I mentioned to defense counsel, cunning and deliberative, but why dangerous? Well, the jury heard a lot of evidence about the nature of these crimes and how they were committed and what happened. This was an armed bank robbery, two armed carjackings. The dangerousness in that context doesn't really go much to state of mind. It goes more to the quality of his acts and how he was proceeding, but certainly a cunning and deliberative person, I mean, those arguments would go to the state of mind, but I don't see or dangerous has much to do with state of mind in that context. Well, the context in which that statement was made was this. I would go through and recount various events, various statements, various acts on the part of the defendant. And then I would say periodically he was many things. He was cunning, deliberative, even dangerous, but he was not legally insane. In fact, every time that phrase cropped up, cunning, deliberative, dangerous, the very next thing out of my mouth was, but he was not legally insane. That was the context in which those comments were made. That was the recurring theme of the government's closing argument. Defendant was not legally insane. This was not a case where the prosecutor, where I stood up to the jury and said, this man is dangerous and needs to be confined. And if you don't convict him, he's going to walk out the courtroom a free man, as was the case in the E-Vault case. I didn't say to the jury, look, he's dangerous and he's going to walk free. And if you don't convict him, if you find him insane, you're going to turn him loose on society again and you shouldn't do that. Well, if you know specifically you can't do that, couldn't you code it by calling him dangerous without following up with the rest of the language? Oh, I suppose if I was being very clever and very subtle and the jury was picking up on all of those little subtleties and if all of those facts came together, then perhaps, yes. But I'm not that subtle. And I don't think the point I was making was that subtle. And that wasn't the point that I was asking the jury to draw. The point I was asking the jury to draw was to look at his conduct, look at his statements, look at how he did the crimes, how he planned them, how he executed them, and what he said about them immediately after when he was arrested. And then ask yourselves, members of the jury, whether those are the conduct, those are the acts, those are the statements of someone who is so severely mentally ill that he couldn't understand the nature and quality of the wrongfulness of his conduct. That was the recurring theme of the closing argument and it's what happened over and over and over again throughout the argument. And even in the Evald case where the prosecutor stood up and said, you've got to convict him and not turn him loose on society, even then this court didn't say, you are entitled to a jury instruction on the consequences of a not guilty by reason of insanity verdict. Now, of course, the court reversed because of the prejudicial comments made by the prosecutor, but it did so because neither of the parties should have been talking about consequences to the jury. Because the consequences of an NGI verdict were not for the jury's consideration, period. That was the holding in Evald. That was the holding also in United States v. Frank, a case which the defendant did not even mention in his opening brief or in his closing argument. But a case in which the defendant, who raised an insanity defense, requested an instruction much the same as the one that was requested by the defendant in this case. The district court declined to give such an instruction and this court affirmed, saying that the consequences of an NGI verdict were of no concern to the jury. Now, as for Simmons v. South Carolina, which Mr. Needham mentioned this morning he was relying on, the government submits that Simmons is simply beside the point. Simmons was a capital murder case in which the jury did have a role in sentencing. After all, it was the jury who was going to decide whether or not the defendant was to be put to death. And in that case, the Supreme Court held that it was error to allow the prosecutor to stand up and argue future dangerousness as a reason for imposing the death penalty while not instructing the jury at the defendant's request that if they voted to imprison him for life instead of impose a death sentence, that that meant life without the possibility of death. And so, consequently, an instruction on the consequences of their verdict was not required. And in fact, in the Shannon case, the Supreme Court expressly distinguished capital cases like Simmons in which the jury decides the sentence. Now, here, members of the court, the district court was faced with the precise situation that was at issue in both Shannon and Frank. In light of those decisions, the district court properly declined to give defendants requested instruction on the consequences of an NGI verdict, which would have had the effect of leaving jurors wondering, will this defendant be released? Will the court decide somewhere down the road in six months or a year or 45 days, which is all the statute requires that the dangerousness hearing be held within? It would leave them wondering whether or not this man is going to be released, whether this man will walk free. And I would suggest that like the Supreme Court in Shannon, it would have focused their attention on the very thing that they were not supposed to be worrying about, the consequences of their verdict. So instead, the district court told the jury correctly that if they returned an NGI verdict, the law provided for further proceedings, which were for the court to decide, and that they must not consider such matters in any way during their deliberations. And then the district court allowed Mr. Needham to argue that point to the jury, which he did. The district court's instruction was fair and accurate, neutral and balanced, and under Shannon and Frank, it was all that this defendant was entitled to under the facts of this case. Accordingly, the district court did not abuse its discretion in instructing the jury as it did, particularly given the undisputed and overwhelming evidence of defendants' guilt on each and every one of the counts. I take it you're effectively withdrawing your objection to the instruction then? The instruction is what it is, and of course the government can't appeal from a jury instruction. But yes, Your Honor, I am. And then the last point I want to make just very briefly is we have yet to hear any argument or see any assignment of error in the appeal in case number 04- I'm sorry, 03-30522, the violation of supervised release. Insofar as we've not had an assignment of error in that case and there has been no argument on it in the opening brief, any argument of error is waived in that case and the appeal in that case should be dismissed. Thank you very much. Are there any other questions? Thank you, counsel. Thank you, Your Honor. You exceeded your time, but we will give you one minute for rebuttal if you would like. I'm not suggesting that the government planned some type of subtle inference, but clearly that was the way the jury heard it. The jury had heard from one of their own during Vardir about what occurred. They heard the testimony and knew what a violent offender he was, yet the argument was made to them that he was a danger, that if he was released, that was weighing on their mind. It was in contravention of what the court would instruct them not to be concerned about the consequences of their verdict. Have you ceded the companion appeal? Your Honor, if the district court had a verdict of not guilty by reason of insanity, that's information for the district court to determine the proper disposition of the supervised release violation. The court has a great deal of options. If a jury was to find Mr. Smith not guilty by reason of insanity, they could formulate some type of new conditions on his supervised release so that if he's ever released from custody when he's found not to be a danger, the court would also have him on supervised release at the same time. So, no, I'm not conceding that. If this court remands for a new trial and there's a different verdict, then the district court would be able to take it up with that. All right, thank you, counsel. Thank you to both counsel. The case just argued is submitted for a decision by the court. The next case on calendar, Norris v. Zerniak has been submitted on the briefs. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak